# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:13-CV-00234

| | |
|---|---|
| DANA B. FULK, THE ESTATE OF JOHN H. FULK III, and JOHN H. FULK III, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN CORPORATION, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

M. Daniel McGinn
Reid L. Phillips
John S. Buford
Nicole A. Crawford
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 26000
Greensboro, NC 27420

*Attorneys for Defendants*

## STATEMENT OF THE MATTER BEFORE THE COURT

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint. Norfolk Southern Railway Company ("NSR") employee John H. Fulk committed suicide. His widow, Plaintiff Dana Fulk, asserts claims against NSR and its parent, Norfolk Southern Corporation ("NSC"), under (1) the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*; and (2) the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. (Compl. ¶¶ 41, 50). Mrs. Fulk has also named John Fulk's estate and John Fulk himself as plaintiffs in this civil action.

The FELA claim, asserted in Count 1 of the Complaint, should be dismissed for failure to state a claim upon which relief can be granted because Plaintiffs fail to allege that any negligence by NSR or NSC was accompanied by a physical impact or placed Mr. Fulk within the zone of danger for any imminent physical impact, that Mr. Fulk's suicide was reasonably foreseeable, or that NSR or NSC had any notice of any mental illness or other propensity to self-harm. The Court lacks subject matter jurisdiction over the FRSA claim, asserted in Count 2 of the Complaint, because it is not premised on a prior administrative FRSA complaint filed by a railroad employee with the U.S. Department of Labor ("DOL"), which is a statutory prerequisite to a FRSA civil action.[1]

---

[1] Defendant NSC is a transportation holding company, not a railroad. FRSA § 20109 does not impose liability on, or allow the filing of complaints against, holding companies that are not railroads. Accordingly, NSC cannot properly be a defendant in a FRSA civil action brought by an employee of a railroad. However, the Court need not reach this issue, because the supposed FRSA claim asserted in this civil action is not brought by a railroad employee at all, and is outside the Court's subject matter jurisdiction in any event, with respect to both defendants.

## BRIEF STATEMENT OF THE FACTS

Mr. Fulk worked for Defendant NSR as a carman at its mechanical repair facility in Linwood, North Carolina. (Compl. ¶¶ 7, 11.) On January 13, 2011, he came to work with a handgun. (Compl. ¶ 29.) He signed in for the afternoon shift at the railroad's yard office, went out to the office parking lot, and shot and killed himself. (*Id.*) Before his death, Mr. Fulk did not file any FRSA complaint with DOL. (Compl. ¶¶ 28-29.)

## QUESTIONS PRESENTED

Do Plaintiffs state a claim for relief under the FELA for the wrongful death of a railroad employee who committed suicide when the complaint fails to allege that the emotional distress giving rise to the suicide was accompanied by a physical impact or the imminent threat of physical impact within the zone of danger, fails to allege facts that would make the suicide foreseeable, and fails to allege that at the time of the suicide the decedent was unable to control or appreciate the nature of his own actions?

Does this Court have subject matter jurisdiction pursuant to the FRSA when the decedent never filed the statutorily prerequisite administrative complaint with the Secretary of Labor?

## ARGUMENT

### I. Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted Under the FELA.

According to this Court, under Rule 12(b)(6):

[A] complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

- 2 -

(2009) (emphasis added) (internal citations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

*Valentine v. Potter*, 2013 U.S. Dist. LEXIS 45397, at *21-22 (M.D.N.C. Mar. 29, 2013).

"Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations to raise a right to relief above the speculative level . . . so as to nudge the claims across the line from conceivable to plausible . . . ."  *Cherry v. City of Greensboro*, 2013 U.S. Dist. LEXIS 14561, at *4 (M.D.N.C. Feb. 4, 2013).

Here, Plaintiffs' allegations fail to state a plausible claim for relief.  Specifically, the Complaint fails to allege that any emotional distress that allegedly led to Mr. Fulk's suicide was accompanied by a physical impact or that Mr. Fulk was in the "zone of danger" for such impact; it fails to allege more than bare conclusions that harm to the Decedent was foreseeable; and it fails to allege that NSR or NSC had any notice of any mental illness or other propensity of Decedent to harm himself.  Absent such allegations, Plaintiffs' claim must be dismissed.

## A.  The FELA Generally.

The Federal Employers Liability Act, 45 U.S.C. § 51 et seq. ("FELA"), imposes liability upon a common carrier by railroad to its employees for injury or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of

- 3 -

such carrier . . . ." *Id.* § 51. Federal courts[2] have long interpreted the FELA to impose a duty on railroads to exercise reasonable care to furnish their employees with a safe working environment. *See, e.g., Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54 (1943). The FELA, however, does not create a standard of strict liability. *Baltimore & Ohio S.W. R.R. Co. v. Carroll*, 280 U.S. 491, 496 (1930). Railroads are not held to an absolute responsibility for the condition of the workplace, and the fact that a workplace is dangerous or a difficult place to work does not alone make the railroad liable. *See id.* ("The employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools, and appliances, but only to the duty of exercising reasonable care to that end."); *see also, e.g., Inman v. Baltimore & Ohio Railroad Co.*, 361 U.S. 138, 140 (1959) ("The Act does not make the employer an insurer."). Instead, in order to recover under the FELA, a plaintiff must allege and prove that NSR was negligent. *Id.* at 139; *Davis v. Burlington N., Inc.*, 541 F.2d 182, 185 (8th Cir. 1976), *cert. denied*, 429 U.S. 1002 (1976).

As a result, Plaintiffs must allege and prove all of the common law elements of negligence, including that: (1) NSR failed to use that degree of care which ordinary and reasonable prudence demands under the circumstances, (2) it was reasonably foreseeable that NSR's conduct might result in injury, and (3) Mr. Fulk's alleged injuries were, in

---

[2] Federal law, not state law, governs FELA claims and the definition and construction of negligence principles therein. *St. Louis S.W. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985); *Urie v. Thompson*, 337 U.S. 163, 174 (1948).

Case 1:13-cv-00234-LCB-JEP   Document 11   Filed 05/08/13   Page 5 of 29

fact, legally caused by NSR's negligence. *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 249 (4th Cir. 1994) (quoting *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)).

**B.    Emotional Injuries Under the FELA Must Be the Result of an Actual Physical Impact or the "Zone of Danger."**

The Supreme Court held in *Conrail v. Gottshall*, 512 U.S. 532 (1994), that emotional injuries[3] are compensable under the FELA under limited circumstances. The Court adopted the "zone of danger" test for FELA emotional distress claims based on its consonance with the FELA's history of addressing physical dangers:

> The zone of danger test also is consistent with FELA's central focus on physical perils. We have recognized that FELA was intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work by allowing employees or their estates to assert damages claims. . . .   FELA was (and is) aimed at ensuring the security of the person from physical invasions or menaces.  But while the statute may have been primarily focused on physical injury, it refers simply to "injury," which may encompass both physical and emotional injury.   We believe that allowing recovery for negligently inflicted emotional injury as provided for under the zone of danger test best harmonizes these considerations.  Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional  injury caused by fear of physical injury to himself, whereas a worker outside the zone will not.  Railroad employees thus will be able to recover for injuries -- physical and emotional -- caused by the negligent conduct of their employers that threatens them imminently with physical impact.  This rule will further Congress' goal in enacting the statute of alleviating the physical dangers of railroading.

*Id.* at 555-56 (emphasis added) (citations and internal quotations omitted).

_____

[3] The Supreme Court defined emotional distress as "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Id.* at 544.

Case 1:13-cv-00234-LCB-JEP   Document 11   Filed 05/08/13   Page 6 of 29

Thus, following *Gottshall*, if a plaintiff suffers emotional distress as a result of a negligently inflicted physical injury or as a result of negligence "that threatens [him] imminently with physical impact," that emotional distress is compensable. Absent such physical injury or imminent threat thereof, there is no recovery.

### C. Suicide Claims Under the FELA.

The Complaint admits that Mr. Fulk, rather than NSR, was the instrument of his own death. Compl. ¶ 29. As a general rule, "Courts have been rather reluctant to recognize suicide as a proximate consequence of a defendant's wrongful act." *Epelbaum v. Elf Atochem, N. Am., Inc.*, 40 F. Supp. 2d 429, 431 (E.D. Ky. 1999) (quoting *Watters v. TSR, Inc.*, 904 F.2d 378, 383 (6th Cir. 1990)). There are, however, certain exceptions that some courts have "carved into the general rule that suicide is an intervening cause eliminating liability on the part of a wrongdoer." *Id.* at 431. None apply to the facts alleged in the Complaint.[4]

There are no reported decisions within the Fourth Circuit involving suicide claims under the FELA. A handful of courts around the country have reported decisions on

---

[4] For example, suicide claims may be cognizable when the decedent was in the custodial care of a negligent defendant, such as in a prisoner-jailor or patient-hospital relationship. *Watters*, 904 F.2d at 383. No such relationship is alleged between Decedent and NSR. Likewise, although suicide claims may be cognizable under certain workers' compensation statutes, *id.* at 383-84, the FELA is not such a statute: "That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." *Gottshall*, 512 U.S. at 543 (citations and internal quotations omitted).

these issues in the context of FELA claims, but none have done so since the Supreme Court's ruling in *Gottshall*.

At least one court has held that suicide is not a compensable injury under the FELA. In *Barilla v. Atchison, Topeka & Santa Fe Ry. Co.*, 635 F. Supp. 1057 (D. Ariz. 1986), the plaintiff was severely physically injured when a piece of equipment fell on him through the railroad's negligence. *Id.* at 1058. The incident allegedly caused "depression and psychological problems" and he took his own life one year later. *Id.* The court dismissed the claim, concluding that "suicide by a railroad employee is not a proximate cause cognizable in an FELA action nor intended to be remedied by the FELA." *Id.* at 1059. Under the *Barilla* rule, Plaintiffs' FELA wrongful death claim simply is not cognizable under any set of facts, and therefore should be dismissed.

Other courts have held that a suicide claim may be cognizable but some notice to the railroad of the employee's suicidal tendencies is required. In *Marazzato v. Burlington Northern R. Co.*, 817 P.2d 672 (Mont. 1991), the Montana Supreme Court affirmed summary judgment in favor of Burlington Northern when one of its employees committed suicide. *Id.* at 673. The decedent was a protected employee under a collective bargaining agreement – he was guaranteed wages even when there was no work for him to do. He was assigned to a "rubber room" in which such union employees could watch TV, play cards, or otherwise entertain themselves. The decedent's estate attempted to demonstrate that "isolation anxiety" resulting from the assignment contributed to

- 7 -

decedent's suicide, but the court found no evidence that the railroad knew or should have known of a reasonable possibility of harm from the assignment. *Id.* at 675.

In *Halko v. New Jersey Transit Rail Operations, Inc.*, 677 F. Supp. 135 (S.D.N.Y. 1987), the widow of a Conrail employee alleged that Conrail and New Jersey Transit Rail Operations (NJT) were negligent in failing to properly hire, train, and supervise their management. *Id.* at 136. The decedent was a former car inspector and had been exposed to persistent harassment from his two immediate supervisors, Wuelfing and Lisk. *Id.* at 136–37. One internal railroad memo stated that Lisk had demonstrated an inability to handle the duties of a supervisor and another memo admonished Wuelfing for allowing constant shortages on decedent's paycheck. *Id.* at 137–39. It was also alleged that Wuelfing played "mind games" with the decedent during NJT's takeover of Conrail. *Id.* at 137–38. The *Halko* Court held that "suicide is actionable under the FELA when the suicide is committed in a state of insanity," meaning that the "mental anguish prevented him from exercising restraint or from truly understanding his actions," *id.* at 142. On the other hand, no liability would attach to the railroad "if Halko was cognizant of the nature of his act or able to control his conduct . . . ." *Id.*

A Florida appellate court adopted a similar rule in *Nelson v. Seaboard Coast Line R. Co.*, 398 So. 2d 980 (Fla. App. 1981), explaining:

> (W)here the negligent wrong only causes a mental condition in which the injured person is able to realize the nature of the act of suicide and has the power to control it if he so desires, the act then becomes an independent intervening force and the wrongdoer cannot be held liable for the death. On the other hand, if the negligent wrong causes mental illness which results in

an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death.

In other words, in order for the employer to be liable for the suicide of the deceased, it must be shown that the negligent act of the employer drove the deceased beyond the point where he could rationally decide against killing himself.

*Id.* at 982 (citations omitted).

### D.    Plaintiffs' Complaint Fails to Satisfy Any of These Rules.

To the extent any of the earlier cases holds that a wrongful death claim can arise under the FELA for an employee suicide, those cases are circumscribed by the Supreme Court's later ruling in *Gottshall*, which requires that a physical impact or the imminent threat of physical impact give rise to emotional distress. Plaintiffs' Complaint alleges intimidation and harassment by NSR, but nowhere alleges that such intimidation or harassment was physical in nature. Likewise, there is no allegation that any alleged negligence by NSR placed Decedent in imminent threat of physical harm. Absent such allegations, Plaintiffs fail to state an FELA claim under *Gottshall*. The physical harm that Decedent inflicted upon himself is not temporally connected to the allegations against NSR; there is nothing "imminent" about it.

Even if Plaintiffs could allege physical harm or the imminent threat thereof in connection with NSR's negligence, Plaintiffs allege only in the most conclusory fashion that Decedent's suicide was reasonably foreseeable to NSR. *See* Compl. ¶ 44 ("Mr. Fulk's workplace was rendered unsafe and unfit because of such [harassing and intimidating] conduct, and it was foreseeable to NS and its management . . . that such

conduct could and would cause mental injury, illness, and despair.").  Such bald allegations do not suffice under *Iqbal* or *Twombly*.  John Fulk drove to work and shot himself.  Nothing in Plaintiffs' Complaint alleges any erratic conduct, psychological counseling, or anything else that would have placed NSR on notice that such an event was likely or foreseeable.

Likewise, Plaintiffs allege that Decedent suffered "a mental and psychological injury, emotional collapse, and breakdown" along with "mental injury, instability, and incapacity."  Compl. ¶¶ 28-29.  However, nowhere does the Complaint allege that the Decedent's suicide was not the product of his own rational choice.  Nowhere does the Complaint allege that the Decedent was unable to control his own conduct.  Nowhere does the Complaint allege that the Decedent was not able to appreciate the nature of his act.  Absent those allegations, Plaintiffs' Complaint does not even satisfy the standards set forth pre-*Gottshall* in *Halko* and *Nelson*.  Plaintiffs' Complaint therefore fails to state a claim under the FELA.

## II.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' FRSA Claim.

The supposed FRSA claim is that NSR allegedly discriminated against John Fulk by retaliating against him for having reported a "hazardous safety or security condition" to NSR in the course of his job duties.  Because FRSA permits the filing of a civil action only by a railroad "employee" *who has previously filed an administrative complaint with DOL*, something that John Fulk undisputedly failed to do, this Court lacks subject matter jurisdiction over  Plaintiffs' FRSA claim.

- 10 -

A. **FRSA Confers Subject Matter Jurisdiction on a District Court with Respect to a Civil Action Brought by a Railroad Employee Who Has Previously Filed an Administrative Complaint, if the Secretary of Labor Has Not Issued a Final Decision with Respect to That Complaint Within 210 Days.**

FRSA, as amended by the Implementing Recommendations of the 9/11 Commission Act, Pub. L. 110-53, 121 Stat. 444 (2007), contains three pertinent provisions.

First, 49 U.S.C. § 20109(b) prohibits discrimination (including retaliation) by a railroad carrier employer, in pertinent part as follows:

> **(b) Hazardous safety or security conditions.--(1)** A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for--
>
> > **(A)** reporting, in good faith, a hazardous safety or security condition;

Second, § 20109(d) provides a railroad employee with a remedy for alleged discrimination violative of subsection (b)(1)(A):

> **(d) Enforcement Action** –
>
> > **(1) In general** – *An employee* who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b) or (c) of this section, *may seek relief* in accordance with the provisions of this section, with any petition or other request for relief under this section to be initiated *by filing a complaint* with the Secretary of Labor.  (Emphasis added.)

Third, § 20109(d)(3) allows an employee to file a *de novo* civil action in District Court, seeking relief for such alleged discrimination, if the Secretary of Labor has not

- 11 -

issued a final decision within 210 days after the employee's initial filing of an administrative complaint under subsection (d)(1):

> **(3)  De novo review.--** *With respect to a complaint under paragraph (1)*, if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, *the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States*, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.  (Emphasis added.)

DOL has adopted regulations governing the handling of administrative complaints under § 20109, which explain further, in 29 C.F.R. § 1982.103(a):

> **(a)  Who may file.**  An *employee who believes* that he or she has been retaliated against by an employer in violation of . . . FRSA may file, or have filed by any person on the employee's behalf, a complaint alleging such retaliation. (Emphasis added.)

The regulations define an "employee" as "an individual presently or formerly working for, [or] an individual applying to work for . . . a railroad carrier . . . "  *Id.* § 1982.101(d).

B.     **This Court Lacks Subject Matter Jurisdiction over Count 2 of This Civil Action Because There Was No Antecedent Administrative Complaint.**

1.     **No Administrative Complaint Was Filed Prior to John Fulk's Death.**

The fundamental proposition is undisputed:  Neither John Fulk nor anyone acting on his behalf filed an administrative FRSA complaint with DOL prior to John Fulk's death.

- 12 -

That fact alone compels dismissal of the instant civil action. The asserted basis for Mrs. Fulk's attempt to invoke the Court's jurisdiction in Count 2 is that, on or about January 20, 2011, one week after John Fulk's death, Mrs. Fulk wrote a letter to DOL, transmitting an unsigned, undated document that she asserted was a draft of a letter to DOL that her husband had supposedly been working on, and saying in her own letter that she was "making the complaint for him." (Mrs. Fulk's letter and its enclosure are reproduced as Exhibit A to Defendants' Motion.) But neither the supposed draft document nor Mrs. Fulk's description of its origin matters, because Mrs. Fulk's allegations do not change the dispositive fact that *no one filed anything with the DOL prior to John Fulk's death*.[5] An employee's widow, whether acting in her own capacity or as executor of a deceased employee's estate, cannot posthumously transform an unfiled document into one that is deemed to have been filed by the employee before his death. Accordingly, a jurisdictional precondition to initiation of a FRSA civil action did not occur.

It is important to make clear that Defendants' motion to dismiss the Count 2 claim does not implicate the more commonplace question whether a proceeding *that has been properly initiated* survives the subsequent death of the person who initiated it. For purposes of this motion, Defendants have no occasion to dispute, and assume *arguendo*,

---

[5] Defendants do not concede that anything attributed to John Fulk and submitted to DOL by Mrs. Fulk is authentic, or actually represents John Fulk's thinking during his lifetime, or was ever intended by him to be filed with DOL as a complaint; but none of this is material to the motion to dismiss Count 2, for the reasons we explain in text.

- 13 -

that if a railroad employee has actually filed a § 20109 complaint with DOL while living, the employee's estate could *continue* to pursue the claim at DOL, or could instead abandon that *properly-initiated* administrative DOL proceeding and file a *de novo* FRSA civil action under § 20109(d)(3).[6] Those propositions, however, do not inform the answer to the very different question presented in this case, which is whether a deceased employee's widow can *initiate* a § 20109 proceeding by filing an administrative complaint when the employee himself never did. FRSA prohibits any such outcome.[7]

> ### 2. Mrs. Fulk's Submission to DOL After Her Husband's Death Was Not a "Complaint" That Could Serve as the Basis for Invoking This Court's Jurisdiction, Because FRSA Does Not Allow the Filing of an Administrative Complaint on Behalf of a Deceased Employee.

FRSA, by its terms, protects the rights of railroad employees to be free from retaliation for engaging in FRSA-protected conduct and confers the right to file a complaint seeking redress only on an *employee* -- not on a surviving spouse and not on

---

[6] However, under established principles, there would be at the very least a bar to the estate's pursuit of punitive, as opposed to remedial relief. *See, e.g., Smith v. Department of Human Services, State of Oklahoma*, 876 F.2d 832, 837 (10th Cir. 1989) (representative of deceased employee's estate could not pursue claim for liquidated damages under ADEA as such a claim is punitive in nature); *EEOC v. Timeless Investments, Inc.,* 734 F. Supp. 2d 1035, 1057 (E.D. Cal. 2010) (same); *Caraballo v. South Stevedoring, Inc.*, 932 F. Supp. 1462, 1466 (S.D. Fla. 1996) (executor could not pursue claim for liquidated damages under ADEA or punitive damages under American With Disabilities Act).

[7] We also do not quarrel with the proposition that an attorney-at-law representing a railroad employee can file an administrative FRSA complaint with DOL on behalf of his living client; this happens routinely and reflects the representative role accorded to attorneys-at-law in our legal system. But filing by an attorney for a living employee did not occur and is not the issue here.

- 14 -

the deceased employee's estate. The DOL implementing regulations, which of course could not expand on the statutory grant of jurisdiction, reinforce the statutory language. The regulations make clear that only a living employee can file a § 20109 complaint (or have one filed on his behalf), for they expressly provide that "[a]n employee who *believes* that he or she has been retaliated against" may file a complaint. 29 C.F.R. § 1982.103(a) (emphasis added). This language excludes the possibility that an employee's estate may file a complaint after the employee has died without having initiated a DOL proceeding. A deceased employee cannot have the required *present tense* belief that he has been the victim of retaliation.

Moreover, *the estate* of a deceased employee is not an "employee" for purposes of FRSA. The DOL regulations do not add anything to the ordinary way in which the statutory term "employee," used in a statute prohibiting and providing remedies for discrimination, would be interpreted. FRSA is not unusual in providing that only a *living* employee may initiate a proceeding seeking relief for alleged discrimination. Analogous anti-discrimination statutes that confer rights on, and provide remedies to an "employee" incorporate exactly the same limitation, and are uniformly applied exactly as FRSA should be applied.

This precise issue has arisen many times in employment discrimination cases brought by federal employees under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e-16(a); the Rehabilitation Act of 1973, 29 U.S.C. § 791; and the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"). The Equal

Employment Opportunity Commission has consistently held that the representative of the estate of a deceased employee *may not initiate* a discrimination claim for the decedent, because the applicable statutes, by their terms, confer that right only on the aggrieved employee (or, under those statutes, applicant for employment). *E.g.*, *Estate of Paul W. Anderson v. Potter*, 2003 WL 22288515 (E.E.O.C. Sept. 23, 2003) (complaint that was initiated not by an aggrieved employee, but by his surviving spouse as representative of the deceased employee's estate, is properly dismissed for lack of standing even though the spouse had contacted the employer's EEO counselor prior to the employee's death while the employee was hospitalized); *Estate of Richard M. Krinsky v. Potter*, 2007 WL 715558 (E.E.O.C. Mar. 2, 2007) (complaint is properly dismissed because deceased employee's widow, executrix of his estate, had no standing to file a complaint on his behalf when she initiated the administrative process two days after his death; Title VII; Rehabilitation Act of 1973; ADEA); *Estate of Monico Torrez v. Potter*, 2010 WL 3137587 (E.E.O.C. July 27, 2010) (complaint is properly dismissed because estate of deceased employee had no standing to file a complaint when the estate initiated the administrative process after the employee's death; Rehabilitation Act of 1973); *Estate of Paul Stanton v. Mabus*, 2010 WL 3410562 (E.E.O.C. Aug. 20, 2010) (complaint is properly dismissed because deceased employee's widow, executrix of his estate, had no standing to file a complaint as the employee did not initiate the administrative process before his death; Rehabilitation Act of 1973; ADEA).[8]

---

[8] Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or

The EEOC's position was recently adopted in *Wright v. United States*, 2012 WL 6095463 (S.D. Miss. Dec. 7, 2012), and applied to dismiss a Title VII claim for lack of jurisdiction. In *Wright*, the husband of a deceased Transportation Security Administration employee brought a civil action seeking to assert, *inter alia*, a claim "for and on behalf of" the deceased employee for sexual harassment -- a claim that could lie against the government agency employer, if at all, only under Title VII of the Civil Rights Act, as amended. *Id.* at *1. The decedent had not filed an administrative claim of

applicants for employment . . . [in specified federal agencies] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 USC § 2000e-16(a). The Rehabilitation Act of 1973 adopts the foregoing language by reference with regard to discrimination against federal employees or applicants on the basis of disability. 29 U.S.C. §§ 791, 794a. The ADEA similarly provides, in pertinent part, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . [in specified federal agencies] . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The EEOC regulation governing the pursuit of an administrative complaint to redress alleged claims of discrimination under these statutes, 29 C.F.R. § 1614.105, provides, in pertinent part:

(a)     Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

\*          \*          \*

(d)     . . . . If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative.

- 17 -

discrimination prior to her death, although her husband purported to do so on his wife's behalf after her death. As pertinent here, the government moved to dismiss the sexual harassment claim for lack of subject matter jurisdiction. The court granted the motion because pursuit of the prescribed administrative complaint remedy by a federal employee is a jurisdictional prerequisite to suit under Title VII, and the employee's failure to initiate an administrative proceeding prior to her death deprived the court of jurisdiction over the subsequent Title VII judicial complaint filed by her husband. The court "found no case recognizing the authority of a deceased employee's representative to initiate an administrative complaint on behalf of the deceased employee," and cited several EEOC decisions holding that a surviving spouse or an employee's estate could not file an administrative complaint of discrimination when the allegedly aggrieved employee had not done so. WL op. at *3.[9]

---

[9] In addition to the *Estate of Paul Anderson* decision we have cited in the text, the court cited EEOC decisions in three other cases: *Barnes v. United States Postal Service*, 1992 WL 1372734 (E.E.O.C. Oct. 3, 1992) (widow of deceased employee, as representative of his estate, could not seek to reinstate complaint because of employer's breach of agreement settling the complaint when the employee had not raised the issue of breach of the settlement agreement prior to his death); *Estate of Yao Hu v. Marvin T. Runyon, Jr., Postmaster General*, 1996 WL 657792 (E.E.O.C. Nov. 6, 1996) (complaint is properly dismissed because deceased employee's widow, as representative of his estate, had no standing to file a complaint where the widow initiated the administrative process after the employee's death); *Estate of Donnie Powell v. Steven R. Cohen, Acting Director, Office of Personnel Management*, 2001 WL 135460 (E.E.O.C. Feb. 6, 2001) (same).

The *Wright* court also cited *Pueschel v. Veneman*, 185 F. Supp. 2d 566 (D. Md. 2002), which held that the personal representative of a deceased federal employee could bring a Title VII action on the employee's behalf *if* the employee had effectively exhausted her administrative remedies *prior to* her death; the issue was whether the employee, acting through an authorized representative, had actually done so, and the court was of the view

- 18 -

The result reached in *Wright* and the EEOC decisions translates directly to claims under § 20109. Even without reference to DOL's implementing regulations, FRSA itself -- like Title VII and the other anti-discrimination statutes -- provides that only an "employee" may initiate a proceeding seeking relief for alleged discrimination. A deceased person cannot be an "employee," and neither is his estate, nor the executor of his estate. NSR and NSC are not aware of any court decision holding that a surviving spouse or executor can pursue a FRSA claim where the allegedly aggrieved employee did not file a complaint with DOL prior to his death.

Similarly, NSR and NSC are aware of no cases holding, under other statutes, that a surviving spouse or executor can file an administrative complaint alleging discrimination when the decedent employee had not done so.[10] There are statutes that permit civil

that deciding that issue required further development of the factual record. *Id.* at 571-74. The court in *Pueschel* took note of, and did not disagree with, the EEOC's rulings that "the survivor of a deceased federal employee has no standing to file an EEO complaint on behalf of that former employee. While a complaint initiated by a federal employee may survive her death, the estate of that employee has no right to file a complaint." *Id.* at 571 (internal quotes and citation omitted).

[10] In *Estate of Werner v. Potter*, 2006 WL 839156 (E.D. Wis. Mar. 24, 2006), the widow of a deceased Postal Service employee who had not initiated the administrative process prior to his death sought to bring a disability discrimination claim under the Rehabilitation Act of 1973. The court recognized the uniform EEOC rule that "a complainant's spouse, acting as a personal representative, does not have standing to initiate the EEO process on behalf of her deceased husband," and did not disagree with it. WL op. at *25. The plaintiff asserted that she had standing to pursue the claim by reason of the doctrines of equitable tolling or equitable estoppel. The plaintiff further contended that the Postal Service had discriminated against the decedent by accepting a resignation form he had signed even though it knew or should have known that because of his mental disability he did not understand what he was signing, and that the decedent lacked capacity to know what his legal rights were or how to pursue them The court recognized

- 19 -

actions to be filed by the estate or beneficiary of a deceased person, but in every such instance that we have found, this right is conferred by express statutory authorization, which is absent here.[11]

### C. Neither Mrs. Fulk nor DOL Officials Have Made Even a Colorable Showing That FRSA Allows the Posthumous Initiation of an Administrative Complaint Proceeding.

The DOL has never issued a decision in connection with Mrs. Fulk's attempted FRSA complaint, which was still pending when Mrs. Fulk notified DOL of her intent to file this civil action. In the course of the DOL's investigation, NSR argued that Mrs.

---

that permitting the widow to bring the Rehabilitation Act claim would be an "unprecedented step," for which she had provided no authority. *Id.* at *26. In the unique circumstance presented, however, the court did not rule on the standing issue pending further development of the factual record, denying without prejudice both plaintiff's motion for partial summary judgment that she had standing and the Government's motion to dismiss for lack of standing, *id.* at *27-28; and the case eventually was settled without further consideration of the point.

[11] *E.g.*, National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1, 300-aa-11(b)(1)(A) (expressly allowing an administrative petition for compensation to be filed by "the legal representative of any person who died, as the result of the administration of a vaccine set forth in the Vaccine Injury Table . . . ."); Torture Victim Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (1992), codified at 28 U.S.C. § 1350 note (expressly allowing claim for damages to be brought by "legal representative" of person who was extrajudicially killed); FELA, 45 U.S.C. §§ 51, 59; Merchant Marine Act, 46 U.S.C. § 30104 (expressly providing that the "personal representative" of a seaman who dies from injury suffered in the course of employment may bring civil action); Death on the High Seas Act, 46 U.S.C. § 30302 (expressly providing that the "personal representative" of decedent may bring civil action in admiralty). *See also, e.g.*, Civil Rights Act of 1871, 42 U.S.C. § 1986 (expressly allowing civil action for damages to be brought by the "legal representative" of a person whose death was caused by an act in violation of what is now 42 U.S.C. § 1985, for the benefit of designated survivors of decedent); Energy Employees Occupational Illness Compensation Program Act, 42 U.S.C. §§ 7384s(e)(2) (expressly providing that if a covered employee dies before filing claim, a survivor of the employee who is eligible to receive benefits may file claim).

Case 1:13-cv-00234-LCB-JEP   Document 11   Filed 05/08/13   Page 21 of 29

Fulk's submission to DOL was not a "complaint" authorized by FRSA. DOL officials informed NSR in correspondence that they disagreed, but they rendered no formal decision on the point. Thus, even while the Government was successfully (and correctly) arguing to the District Court in *Wright v. United States* that a deceased employee's spouse cannot initiate a proceeding on behalf of the employee under a federal anti-discrimination statute, DOL officials were conducting (over objection) an investigation premised on the supposition that a deceased employee's spouse could do exactly that.

We have not seen -- and will not see, in this case, which has been withdrawn from DOL -- any statement from DOL that could serve to explain how Mrs. Fulk's submission to DOL could be said to constitute a valid administrative complaint. We do not, in fact, know that DOL would ultimately have agreed with Mrs. Fulk that her submission did constitute a valid FRSA complaint. In correspondence with NSR, one DOL official suggested that the language of 49 U.S.C. § 20109(d), which establishes the procedure for enforcement of FRSA's prohibition against discrimination, authorized Mrs. Fulk to file a complaint because that subsection incorporates by reference, for certain purposes, the provisions of another statute, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121 ("AIR21"), which supposedly allows for filing of an initial complaint under that statute by a deceased employee's widow. But that proposition is clearly wrong. Section 20109(d) does not incorporate the AIR21 language on which the DOL official relied, and, in any event, that language, which is materially the

same as the language of DOL's FRSA regulations, would have precluded, not permitted, the initiation of a complaint proceeding by Mrs. Fulk.

In particular, FRSA § 20109(d)(2)(A) states:

> **(A)  In general.--**Any action under paragraph (1) shall be governed under the rules and procedures set forth in section 42121(b), including:
>
>> **(i)  Burdens of proof.--**Any action brought under (d)(1) shall be governed by the legal burdens of proof set forth in section 42121(b).
>>
>> **(ii)  Statute of limitations.--**An action under paragraph (1) shall be commenced not later than 180 days after the date on which the alleged violation of subsection (a), (b), or (c) of this section occurs.
>>
>> **(iii)  Civil actions to enforce.--**If a person fails to comply with an order issued by the Secretary of Labor pursuant to the procedures in section 42121(b), the Secretary of Labor may bring a civil action to enforce the order in the district court of the United States for the judicial district in which the violation occurred, as set forth in 42121.

The DOL official's suggestion was that this provision allows the requirement for the filing of a complaint in § 20109(d)(1) to be satisfied by compliance with the language of an AIR21 provision, 49 U.S.C. § 42121(b)(1), which specifies that "[a] *person who believes that he or she has been discharged or otherwise discriminated against* by any person . . . may file *(or have any person file on his or her behalf)* a complaint with the Secretary of Labor alleging such discharge or discrimination."   (Emphasis added.) According to the DOL official, Mrs. Fulk's supposed complaint could be cognizable

- 22 -

under FRSA if (a) Mr. Fulk believed that he had been discriminated against by NSR, and (b) he had Mrs. Fulk file a complaint with OSHA on his behalf.

That contention is misconceived and simply avoids the actual question. In the first place, the language of § 42121(b) does not appear in FRSA, and it was not imported from AIR21 into FRSA by operation of § 20109(d)(2)(A).[12] But even if the language of AIR 21's § 42121(b) did apply, it would only confirm that Mrs. Fulk did not file a valid FRSA complaint. By its own terms, § 42121(b) requires that the person filing a complaint must be someone "who believes that he or she has been . . . discriminated against." When Mrs. Fulk made her submission to OSHA, John Fulk no longer believed that, if he ever did. Nor, therefore, can it be said that John Fulk had Mrs. Fulk file a complaint "on behalf of" John Fulk. Accordingly, Mrs. Fulk's submission would not be cognizable under the quoted language of AIR21.[13]

---

[12] Subsection (d)(2)(A) does not say "the filing of a complaint with the Secretary of Labor under paragraph [(d)](1) shall be governed under the rules and procedures set forth in section 42121(b)"; it says "*any action under paragraph (1)* shall be governed under the rules and procedures . . . ." (Emphasis added.) The initial filing of a complaint with the Secretary is not "an action under paragraph (1)." Paragraph (1) authorizes the filing of an administrative complaint in the first instance; the "action under paragraph (1)" to which § 20109(d)(2)(A) refers is the administrative proceeding that is commenced by the filing. This is not only the ordinary legal and statutory usage of the term "an action," but its applicability here is confirmed by another provision in the same FRSA subsection, § 20109(d)(2)(A)(ii), which uses the same term ("[a]n action under paragraph (1)") to refer to the administrative proceeding.

[13] DOL's FRSA regulations, cited earlier in the text, essentially track § 42121(b)(1). Although the regulations could not expand DOL jurisdiction beyond whatever limitations are imposed in FRSA itself (and certainly could not confer jurisdiction on a District Court when the statute did not), the fact is that Mrs. Fulk's submission to DOL did not qualify as a "complaint" under the plain terms of the DOL regulations for the same reason it

For her part, Mrs. Fulk contended at DOL that she did have standing to file an administrative complaint on behalf of her late husband.  But the only supposed authority she cited was *Kulling v. Grinders Industry, Inc,*, 185 F. Supp. 2d 800 (E.D. Mich. 2002), a case in which the executor of a deceased employee's estate was allowed to maintain a federal ADEA lawsuit after the employee had died.  That decision provides no authority for opposing our motion to dismiss Mrs. Fulk's Count 2 claim.  The employer in *Kulling* did not contest the executor's standing to commence an ADEA civil action, and the District Court did not even consider the question whether, under the ADEA, it lacked jurisdiction because the employee himself had not initiated any type of ADEA proceeding before his death.  A decision in which jurisdiction is uncontested and assumed has no precedential effect with respect to the question of jurisdiction.  *E.g., Arizona Christian School Tuition Organization v. Winn,* 131 S. Ct. 1436, 1448 (2011); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (it is "quite impossible" that a prior case supported a conclusion that standing existed in the current matter "since standing was neither challenged nor discussed in that case, and we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect"); *Will v. Michigan Department of State Police*, 491 U.S. 58, 63 n.4 (1989); *Defenders of Wildlife v. Perciasepe*, 2013 WL 1729598, at *6 (D.C. Cir. Apr. 23, 2013).  *Kulling* therefore carries no weight on the

_____

would not qualify under § 42121(b)(1) if that AIR21 section applied to the filing of her submission, which it did not.

jurisdictional issue presented by Mrs. Fulk's Count 2 claim, against the language of FRSA and its implementing regulations and the meaning of the similar language in ADEA and other anti-discrimination statutes.

*     *     *

The supposed administrative complaint submitted by Mrs. Fulk to DOL was not the complaint of NSR employee John Fulk. In order for Mrs. Fulk's complaint to be cognizable under FRSA, there would have to be, at minimum, some statutory provision authorizing the posthumous filing of a complaint by a deceased employee's widow, or by the representative of the employee's estate. But there is no such provision. Nor, as we have previously explained, is there any general provision of law, or common understanding, that would permit such filing. The right to file an administrative FRSA complaint belongs to an employee alone, and John Fulk did not file a complaint.

Although John Fulk is named as a plaintiff in the caption of this civil action, he cannot be a party to this case because he was not alive when the case was filed in this Court. Mrs. Fulk brings this civil action as executor of John Fulk's estate and as a survivor allegedly entitled to benefits, presumably in regard to the FELA claim asserted in Count 1. However, that is insufficient to permit the Court to consider her FRSA claim.

Because there was no prerequisite FRSA administrative complaint, Mrs. Fulk's Count 2 claim is outside this Court's subject matter jurisdiction and must be dismissed.

## CONCLUSION

For the foregoing reasons, the claim asserted in Count 1 of the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and the claim asserted in Count 2 should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Respectfully submitted this 8th day of May, 2013.

/s/ M. Daniel McGinn
M. Daniel McGinn
North Carolina State Bar No. 5051
 dmcginn@brookspierce.com

/s/ Reid L. Phillips
Reid L. Phillips
North Carolina State Bar No.7968
 rphillips@brookspierce.com

/s/ Nicole A. Crawford
Nicole A. Crawford
North Carolina State Bar No. 31466
 ncrawford@brookspierce.com

/s/ John S. Buford
John S. Buford
North Carolina State Bar No. 28455
 jbuford@brookspierce.com

*Attorneys for Defendants*
*Norfolk Southern Railway Company and*
*Norfolk Southern Corporation*

OF COUNSEL:

BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone:    336-373-8850
Facsimile:    336-378-1001

- 27 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** has been electronically filed using the CM/ECF system, and the following parties were served via the Court's electronic notification system:

>       Rachel Scott Decker
>       Carruthers & Roth, P.A.
>        rsd@crlaw.com

This the 8th day of May, 2013.

>       /s/ John S. Buford
>       John S. Buford