IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANA B. FULK, THE ESTATE OF      )
JOHN H. FULK III, and JOHN H.    )
FULK III,                        )
                                 )
            Plaintiffs,          )
                                 )
    v.                           )                1:13CV234
                                 )
NORFOLK SOUTHERN RAILWAY          )
COMPANY and NORFOLK SOUTHERN      )
CORPORATION,                     )
                                 )
            Defendants.          )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before the court is Defendants' Motion to Dismiss
(Doc. 10).  Defendants have filed a memorandum (Doc. 11) in
support of their motion, Plaintiffs have filed a response in
opposition (Doc. 20), and Defendants have filed a reply (Doc.

21).[1]  Defendants' motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion in part and deny it in part.

## I.  **BACKGROUND**

The following facts are presented in the light most favorable to Plaintiffs.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plaintiffs bring suit against Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively, "Norfolk Southern" or "Defendants"), its parent company, alleging violations of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, and the anti-retaliation section of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109.[2] Norfolk Southern is a common carrier by railroad that is engaged in interstate commerce.  (Complaint ("Compl.") (Doc. 1) ¶ 8.)

_____

[1] This court will deny Plaintiffs' Motion for Leave to File Surreply (Doc. 22).  "Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply."  DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010); see also Olvera-Morales v. Int'l Labor Mgmt. Corp., 246 F.R.D. 250, 254 (M.D.N.C. 2007) ("Surreplies are generally disfavored . . . .").  Plaintiffs have not identified any of the arguments or issues they contend were raised for the first time in Defendants' reply, and it appears to this court that the reply was limited to addressing issues raised by Plaintiffs in their response brief.

[2] Defendant Norfolk Southern Corporation contends that it cannot be liable under 49 U.S.C. § 20109 because it is a transportation holding company, not a railroad.  (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 11) at 2 n.1.) Plaintiffs did not respond to this argument.

John H. Fulk III ("Mr. Fulk") worked for Norfolk Southern as a railroad car inspector at Linwood Yard, North Carolina. (Id. ¶ 9.) As an inspector, Mr. Fulk was responsible for many safety-related functions, including the examination of rail cars for defects or noncompliance with Federal Railroad Administration ("FRA") regulations. (Id. ¶ 10.) When inspectors found a defective or noncompliant car, they were supposed to place a "bad order" tag on the car. (Id. ¶ 11.) Those tags would list the discovered defects and compliance issues and notify the carmen in the repair shop what repairs needed to be made. (Id.) Tagged cars were placed in "bad order" status and were not allowed to be put back in use until the repairs were completed. (Id.)

Mr. Fulk became extremely bothered by the attitude of Norfolk Southern management toward FRA regulations. (Id. ¶ 14.) The management consistently chose to get trains out on time rather than comply with regulations. (Id.) In addition, Norfolk Southern management had "bad order" quotas and did not want inspectors or carmen, including Mr. Fulk, to place tags on defective cars and cause the "bad order count" to go "up." (Id. ¶ 15.)

Norfolk Southern supervisors set a bad order target of fifty such orders at any one time at Linwood Yard no matter how

many cars were defective or noncompliant. (Id. ¶ 16.)  This fifty-car "shop count" was discussed daily in the workplace. (Id.)  When the "shop count" was greater than fifty, Norfolk Southern management told the inspectors that the company did not "need any more bad order cars." (Id.)  Employees who continued finding bad orders after there were already fifty were targeted for harassment. (Id. ¶ 17.)

Norfolk Southern management pressured Mr. Fulk not to bad order cars, and Mr. Fulk's bad order tags were routinely removed before the car had been repaired. (Id. ¶ 20.)  It was made very clear to Mr. Fulk that he was expected to limit his bad orders, which would have required Mr. Fulk to violate FRA regulations and Norfolk Southern's own rules. (Id. ¶ 21.)  Mr. Fulk refused to follow this order and continued to tag cars that were defective or noncompliant with FRA regulations. (Id. ¶ 22.)  Because of his adherence to FRA regulations, Mr. Fulk was subjected to abusive intimidation, disciplinary threats, and job threats by Norfolk Southern management. (Id.)  Although he reported these acts and omissions, Norfolk Southern never took action to stop such treatment. (Id. ¶ 24.)

On January 6, 2011, Norfolk Southern accused Mr. Fulk of trying to "sabotage" the braking system on one of its trains. (Id. ¶ 25.)  A formal hearing was scheduled for January 19,

2011, on charges of "improper performance of duty" and "conduct unbecoming an employee." (Id.) The charges were false. (Id. ¶ 26.) Norfolk Southern's actions were an attempt to terminate Mr. Fulk because he would not help violate FRA regulations and to intimidate other employees. (Id.)

Mr. Fulk reported to work as scheduled on January 13, 2011. (Id. ¶ 29.) After signing in, he returned to the employee parking lot and shot himself in the head with a pistol. (Id.) He died from the wound. (Id.)

Mr. Fulk had drafted letters to the FRA and the Regional Director of the Department of Labor's Occupational Safety and Health Administration ("OSHA") before his death to report the conduct of Norfolk Southern and its supervisors and make a complaint of retaliation. (Id. ¶ 27.) Those letters outlined various violations of FRA minimum standards. (Id.) He fully intended to send the letters; however, the scheduled hearing combined with years of harassment and pressure caused Mr. Fulk to suffer a mental and psychological injury, emotional collapse, and breakdown. (Id. ¶ 28.)

A few days after Mr. Fulk's death, his widow filed a retaliation complaint with the OSHA Regional Director on behalf of Mr. Fulk. (Id. ¶ 30.) She attached Mr. Fulk's draft letter. (Id.)

Mrs. Fulk also submitted a complaint to the FRA with the draft letter attached. (Id. ¶ 31.) The FRA conducted an investigation through which it discovered numerous regulatory violations. (See id. at ¶¶ 32-36 (describing the investigation and its results).) Employees who were interviewed during the investigation consistently mentioned Mr. Fulk as a target of Norfolk Southern supervisors; however, no one was willing to sign a witness statement for fear of retaliation. (Id. ¶ 33.)

Plaintiffs filed this de novo action after a final administrative decision on the FRSA claim had not been issued within 210 days. See 49 U.S.C. § 20109(d)(3).

## II.  LEGAL STANDARD

Defendants move to dismiss Plaintiffs' FRSA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and their FELA claim pursuant to Rule 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction. When, as here, a defendant "makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint

-6-

alleges sufficient facts to invoke subject matter jurisdiction."
Id.

To survive a Rule 12(b)(6) motion, a plaintiff must allege
"sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Iqbal, 556 U.S. at
678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)). In order for a claim to be facially plausible, a
plaintiff must "plead[] factual content that allows the court to
draw the reasonable inference that the defendant is liable" and
must demonstrate "more than a sheer possibility that a defendant
has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).
When ruling on a Rule 12(b)(6) motion, a court must accept the
complaint's factual allegations as true. Id. However, "the
tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions,"
and "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Id.
(citing Twombly, 550 U.S. at 555).

## III. ANALYSIS

For the reasons that follow, this court finds that the
motion to dismiss should be granted as to the FELA claim and
denied as to the FRSA claim. The potential damages available
under the FRSA are outlined in this order.

## A.  **FELA Claim**

Defendants move to dismiss the FELA claim on three grounds: (1) the Complaint fails to allege a compensable injury, (2) the Complaint fails to adequately allege causation, and (3) the Complaint fails to allege that Defendants had notice of any mental illness or other propensity of Mr. Fulk to harm himself. Because this court finds that the Complaint does not allege any injuries that are compensable under FELA, it does not address Defendants' other arguments for dismissal.

As relevant in this case, FELA imposes liability upon an interstate common carrier by railroad to its employees for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51.  Although the statute mentions only negligence, FELA "has been construed to cover some intentional torts."  Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562 n.8 (1987); see also Slaughter v. Atl. Coast Line R.R. Co., 302 F.2d 912, 915-16 (D.C. Cir. 1962) ("[I]t would be anomalous to disallow recovery for an injury merely because the harm was intentionally inflicted.").  A "relaxed standard of causation applies under FELA," Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994): The "single inquiry" is whether "negligence of the employer played any part at all in the injury

or death." <u>Rogers v. Mo. Pac. R.R. Co.</u>, 352 U.S. 500, 507 (1957); <u>see also</u> <u>CSX Transp., Inc. v. McBride</u>, 564 U.S. ____, ____, 131 S. Ct. 2630, 2638-39 (2011).  The act is primarily "intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work by allowing employees or their estates to assert damages claims," <u>Gottshall</u>, 512 U.S. at 555, and is to be "liberally construed . . . to further Congress' remedial goal."  <u>Id.</u> at 543.

Plaintiffs seek compensation for Mr. Fulk's mental injuries and suicide that allegedly resulted from the misconduct of Norfolk Southern managers and supervisors.[3]  (<u>See</u> Compl. (Doc. 1) ¶ 43 ("[Norfolk Southern] and its management, officers, supervisors, managers, and other employees in authority negligently and/or intentionally engaged in harassing and intimidating conduct . . . ."); <u>id.</u> ¶ 44 ("Mr. Fulk's workplace was rendered unsafe and unfit because of such conduct . . . ."); <u>id.</u> ¶ 46 ("Mr. Fulk's mental injury and suicide were caused, in whole or in part, by the negligence and/or intentional conduct of [Norfolk Southern] and its management, officers, supervisors, managers, and other employees in authority . . . .").)  The only

---

[3] FELA claims survive the death of injured employees, 45 U.S.C. § 59, and the act permits wrongful death claims.  <u>Id.</u> U.S.C. § 51; <u>see also</u> <u>Mich. Cent. R.R. Co. v. Vreeland</u>, 227 U.S. 59, 68-69 (1913).

physical injury alleged is Mr. Fulk's self-inflicted gunshot wound.

This court first finds that Plaintiffs' FELA claim is based on mental and emotional injuries that are potentially compensable only if they resulted from a physical impact or an imminent threat of physical impact.[4]  In Consolidated Rail Corp. v. Gottshall, the Supreme Court held that the zone of danger test applies to FELA claims for negligently inflicted emotional injuries.  512 U.S. at 554.  Under that test, railroad employees "will be able to recover for injuries – physical and emotional – caused by the negligent conduct of their employers that threatens them imminently with physical impact."  Id. at 556. The Court adopted the zone of danger test because it "best harmonizes" FELA's primary focus on physical injury and the statute's use of the word "'injury,' which may encompass both physical and emotional injury."  Id.

Although Gottshall did not address the appropriate test for claims alleging intentional infliction of emotional distress,

_____

[4] Because this court finds that the alleged injuries are compensable only if they satisfy the zone of danger test, it does not address Plaintiffs' argument that this court should look to the Restatement (Second) of Torts § 455 (1965) to determine whether Mr. Fulk's suicide is compensable under FELA. In addition, that section, which addresses liability for negligent conduct, is in some tension with Gottshall, which requires plaintiffs to satisfy the zone of danger test for negligent infliction of emotional distress claims.

id. at 541 n.2, the opinion "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action." Smith v. Union Pac. R.R. Co., 236 F.3d 1168, 1171 (10th Cir. 2000). Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress claims. See, e.g., Goodrich v. Long Island Rail Road Co., 654 F.3d 190, 198 (2nd Cir. 2011) ("Neither FELA's terms nor any court decision of which we are aware supports expanding the injuries for which recovery is available under FELA to include those occurring outside a zone of physical danger."); Gannon v. Nat'l R.R. Passenger Corp., 422 F. Supp. 2d 504, 513 (E.D. Pa. 2006); see also Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 147 (2003) (recognizing two categories of FELA claims: "[s]tand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted"); Higgins v. Metro-North R.R. Co., 318 F.3d 422, 431 (2nd Cir. 2003) (Sotomayor, J., concurring) ("I would hold that the zone of danger test applies to plaintiff's intentional infliction of emotional distress claim . . . ."); Smith, 236 F.3d at 1171; Lancaster v. Norfolk & W. Ry. Co., 773 F.2d 807, 813 (7th Cir. 1985) ("FELA does not

create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact – an act such as telling a man he's fired . . . .").

In <u>Goodrich v. Long Island Rail Road Co.</u>, which this court finds persuasive, the Second Circuit recognized that "the common law does not currently impose a zone of danger test on [intentional infliction of emotional distress] claims."[5]  654 F.3d at 196.  Assessing the intentional infliction of emotional distress tort "in the appropriate historical context," however, the court determined that it was "in a nascent stage at the time of FELA's passage."[6]  <u>Id.</u> at 197; <u>see also</u> <u>id.</u> at 197-99 (discussing the history of the tort).  Having factored in both FELA's primary concern with physical harm and the state of the law at the time it was enacted, the Second Circuit concluded that intentional infliction of emotional distress is a "tort

---

[5] The Restatement (Third) of Torts defines the intentional infliction of emotional distress tort in these terms: "An actor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional harm to another is subject to liability for that emotional harm and, if the emotional harm causes bodily harm, also for the bodily harm."  Restatement (Third) of Torts § 46 (2012); <u>see also</u> Restatement (Second) of Torts § 46(1) (1965).  Defendants have not argued that the Complaint fails to adequately allege extreme and outrageous conduct.

[6] Courts have been instructed to consider FELA questions "in the appropriate historical context."  <u>See</u> <u>Gottshall</u>, 512 U.S. at 555; <u>Monessen Sw. Ry. Co. v. Morgan</u>, 486 U.S. 330, 337 (1988).

unbounded by any connection to the dangers originally prompting Congress to protect railroad workers through enactment of FELA." Id. at 198-99. Accordingly, the court found no reason "why the same definition of injury should not apply in the [negligent infliction of emotional distress] and [intentional infliction of emotional distress] contexts." Id. at 199.

Having found that the zone of danger test applies to Plaintiffs' FELA claim, this court finds that the Complaint does not satisfy that test. Plaintiffs raise two arguments against this conclusion: (1) "Mr. Fulk absolutely suffered from a physical impact – a gunshot to the head"; and (2) "not only was Mr. Fulk at risk of injury and death from suicide because of [Defendants'] oppressive and targeted wrongful conduct, he was also at risk of injury and death from defective railcars just like everyone else." (Pls.' Resp. and Br. Opposing Mot. to Dismiss ("Pls.' Resp.") (Doc. 20) at 30.)[7]

Intentional harassment and wrongful adverse employment actions, standing alone, do not satisfy the zone of danger test. In Gallimore-Wright v. Long Island R.R. Co., the plaintiff alleged that the defendant railroad had "intentionally inflicted

_____

[7] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-13-

emotional distress upon her by undertaking a deliberate campaign to subject her to discipline and fire her in retaliation for her prior lawsuit."  354 F. Supp. 2d 478, 487 (S.D.N.Y. 2005). Despite acknowledging that the alleged conduct was "[r]eprehensible" if true, the court dismissed the FELA claim because there was "no suggestion that it resulted in any physical impact on plaintiff or brought her within the zone of danger of such an impact." Id.; see also Roberts v. CSX Transp., Inc., Cause No. 1:06-CV-00169, 2006 WL 1763640, at *3 (N.D. Ind. June 26, 2006) (finding that injuries "stemming from nonphysical contact, such as the alleged supervisor harassment, the arguably flawed disciplinary proceedings, or [the plaintiff's] wrongful firing," were not compensable under FELA as a matter of law).

In addition, even severe mental or emotional injuries that lead to physical manifestations are insufficient, on their own, to bring a claim within FELA.[8]  See, e.g., Gottshall, 512 U.S. at 544 ("The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical

---

[8] Because the zone of danger test applies to FELA cases based on the type of injury, not the form of action, cases addressing negligently inflicted emotional injuries are instructive here.

-14-

injury, but that may manifest itself in physical symptoms.");
Smith, 236 F.3d at 1174 ("[The plaintiff's] disrupted sleep
cycle, and resulting depression and other physical maladies,
constituted an emotional injury to which [Gottshall's] zone of
danger test applies."); Crown v. Union Pac. R.R. Co., 162 F.3d
984, 986 (8th Cir. 1998) (finding that a plaintiff's injuries
were not compensable under FELA despite "his evidence of
emotional and physical injuries"); Szymanski v. Columbia Transp.
Co., 154 F.3d 591, 594 (6th Cir. 1998) (finding, under the Jones
Act, that a heart attack allegedly arising from job-related
stress was not a physical injury and distinguishing "the
'physical impact' that is a prerequisite for liability (meaning
either actual impact by a physical object or being in the zone
of danger for such an impact)" from "any physical manifestations
of an emotional injury that may have occurred" (footnote
omitted)).

These cases are supported by the Supreme Court's analysis
in Gottshall.  Both plaintiffs in that case demonstrated
objective manifestations of their emotional distress.  One
plaintiff experienced "insomnia, headaches, depression, and
weight loss," followed by a "nervous breakdown."  Gottshall, 512
U.S. at 539.  The other experienced "nausea, insomnia, cold
sweats, and repetitive nightmares concerning [a crew member's

on-the-job] death," in addition to weight loss, anxiety, and suicidal preoccupations. Id. at 536-37. Despite their severity, these emotional injuries were not compensable under FELA.

Here, the only physical injury alleged is Mr. Fulk's self-inflicted gunshot wound.[9] This court finds that a self-inflicted injury under the circumstances described in this case cannot be used to circumvent the zone of danger test.[10] Furthermore, as noted above, intentional harassment and wrongful adverse employment actions are insufficient, on their own, to satisfy the zone of danger test. Finally, although Mr. Fulk may have been "at risk of injury and death from defective railcars just like everyone else," (Pls.' Resp. (Doc. 20) at 30), the Complaint does not allege that he was ever "threaten[ed] . . .

---

[9] Under Plaintiffs' argument that the gunshot wound satisfies the impact requirement, had Mr. Fulk committed suicide in some other manner, he would not meet the zone of danger test. Thus, the distinguishing factor becomes solely the manner of the commission of the suicide. This court finds that construing the Gottshall case and the impact requirement to reach that type of result is not logical.

[10] This court does not rule out the possibility that suicide may be compensable under FELA under certain circumstances. For example, had Mr. Fulk been "run-over by a rail car" (Pls.' Resp. (Doc. 20) at 30) and later committed suicide, there would have been a physical impact attributable to Norfolk Southern and this court might view this case differently.

imminently with physical impact." See Gottshall, 512 U.S. at 556.

Accordingly, this court finds that the Complaint fails to allege an injury that is compensable under FELA.

The parties have directed this court's attention to five cases which address whether suicide may be a compensable injury under FELA. See Delise v. Metro-North R.R. Co., 646 F. Supp. 2d 288 (D. Conn. 2009); Halko v. N.J. Transit Rail Operations, Inc., 677 F. Supp. 135, 142 (S.D.N.Y. 1987) ("[S]uicide is actionable under the FELA when the suicide is committed in a state of insanity."); Barilla v. Atchison, Topeka & Santa Fe Ry. Co., 635 F. Supp. 1057, 1059 (D. Ariz. 1986) ("The Court . . . concludes as a matter of law that suicide by a railroad employee is not a proximate cause cognizable in an FELA action nor intended to be remedied by the FELA."); Marazzato v. Burlington N. R.R. Co., 817 P.2d 672 (Mont. 1991) (holding that suicide must at least be reasonably foreseeable); Nelson v. Seaboard Coast Line R.R. Co., 398 So. 2d 980, 982 (Fla. Dist. Ct. App. 1981) ("[I]n order for the employer to be liable for the suicide of the deceased, it must be shown that the negligent act of the employer drove the deceased beyond the point where he could rationally decide against killing himself.").

Only _Delise_ was decided after _Gottshall_, and this court does not find that opinion persuasive. First, it does not address whether _Gottshall_ should apply. Second, it appears that the defendant-railroad only argued that the decedent was not an employee at the time he committed suicide and that his suicide was not foreseeable. _Delise_, 646 F. Supp. 2d at 291. Regardless, the opinion offers very little in the way of specific facts and, in the absence of any discussion about _Gottshall_, the opinion is not persuasive as to this case.

Furthermore, each of the cases relied upon by Plaintiffs – _Delise_,[11] _Halko_,[12] and _Nelson_ – contain an "uncontrollable impulse" standard not applied in _Gottshall_. The "irresistible impulse" inquiry acknowledges "the general rule that suicide is an intervening cause eliminating liability on the part of a

---

[11] The _Delise_ court relied upon _Norfolk & Western Ry._, 538 U.S. 135, which addressed emotional injury associated with asbestosis, a cognizable physical injury under FELA. _Id._ at 148. The court concluded that "genuine issues exist as to whether negligent supervision by Metro-North played a part in Mr. Delise's death, and as to whether Mr. Delise's suicide was the result of an "'uncontrollable impulse.'" _Delise_, 646 F. Supp. 2d at 291. Thus, the district court did not consider whether the type of injuries alleged in the complaint were compensable under FELA.

[12] _Halko_ did not rely entirely upon the "uncontrollable impulse" standard, but also recognized a "causal connection" standard. Nevertheless, the _Halko_ court concluded the claim survived under either standard, including as an "uncontrollable impulse."

wrongdoer," but asks whether the "'decedent was delirious or insane and either incapable of realizing the nature of his act or unable to resist an impulse to commit it.'" <u>Epelbaum v. Elf Atochem, N. Am., Inc.</u>, 40 F. Supp. 2d 429, 431 (E.D. Ky. 1999) (citing <u>Watters v. TSR, Inc.</u>, 904 F.2d 378, 384 (6th Cir. 1990)). As stated by the <u>Nelson</u> court, "in order for the employer to be liable for the suicide of the deceased, it must be shown that the negligent act of the employer drove the deceased beyond the point where he could rationally decide against killing himself."  <u>Nelson</u>, 398 So. 2d at 982.

Plaintiffs' allegations do not meet this standard. Plaintiffs alleges that "Mr. Fulk drafted letters to the FRA and the Regional Director of the Department of Labor's Occupational Safety & Health Administration ('OSHA') to expose Norfolk Southern and its supervisors for their illegal conduct and make a complaint of retaliation." (Compl. (Doc. 1) ¶ 27.)  The Complaint then alleges:

> Mr. Fulk fully intended to send these letters. However, the upcoming termination hearing combined with the fact that NS was also harassing Wesley Ball (another car inspector at Linwood Yard who was also the nephew of Mrs. Fulk) combined with the years of harassment and pressure, caused Mr. Fulk to suffer a mental and psychological injury, emotional collapse, and breakdown.

> Because of his mental injury, instability, and incapacity, Mr. Fulk did not mail the letters. Instead, he reported to work on 1/13/11 as scheduled.

> After he signed in for work, he went to the employee
> parking lot and shot himself in the head with a
> pistol. He died from his wounds.

(Id. ¶¶ 28, 29.)  Thus, while the Complaint alleges mental

injury, instability, incapacity, emotional collapse, and

breakdown, it does not plausibly allege insanity or

uncontrollable impulse.  Nor will this court infer an

"uncontrollable impulse" from these allegations. Instead, the

Complaint alleges rational conduct – the drafting of letters to

FRA and the Regional Director of the Department of Labor's OSHA

to expose Defendants for illegal conduct and the intent to send

these letters – followed by the allegations of suicide.  The

Complaint does not allege any facts intervening between the

rational conduct and the suicide that might offer some basis

upon which to conclude the suicide was an uncontrollable impulse

and not, as described in Nelson, "a mental condition in which

the injured person is able to realize the nature of the act of

suicide and has the power to control it if he so desires."

Nelson, 398 So. 2d at 982.

     In opposition, Plaintiffs argue that paragraphs 28 and 29

of the Complaint "clearly allege that Mr. Fulk's mental injury

caused his behavior."  (Pls.' Resp. (Doc. 20) at 25.)  While

this may be true, the Complaint does not allege the degree of

Mr. Fulk's mental injury, nor does it allege insanity or an

uncontrollable impulse. There are simply no facts alleged to support any inference of insanity or uncontrollable impulse, particularly in light of the rational conduct and intent that preceded the suicide.

As a result, this court concludes, in light of <u>Gottshall</u>, that the Complaint fails to plausibly allege an actionable injury under FELA.

Plaintiffs also contend, in the alternative, that Defendants are "absolutely liable" under FELA for their alleged violation of the anti-retaliation provision of the FRSA. (Pls.' Resp. (Doc. 20) at 26.)  In support of their position, Plaintiffs rely on cases holding railroads absolutely liable under FELA for injuries caused by violations of various railroad safety acts.  <u>See</u> <u>Baltimore & Ohio R.R. Co. v. Groeger</u>, 266 U.S. 521 (1925) (Boiler Inspection Act); <u>San Antonio & Aransas Pass Ry. Co. v. Wagner</u>, 241 U.S. 476 (1916) (Safety Appliance Act); <u>McCarthy v. Pennsylvania R.R. Co.</u>, 156 F.2d 877 (7th Cir. 1946) (Safety Appliance Act); <u>Jarrett v. CSX Transp., Inc.</u>, No. 1:08-CV-290, 2008 WL 4239148 (N.D. Ohio. Sept. 10, 2008) (Locomotive Inspection Act); <u>Robb v. Burlington N. & Santa Fe Ry. Co.</u>, 100 F. Supp. 2d 867 (N.D. Ill. 2000) (Safety Appliance Act).  "It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute

specifically aimed at the railroad industry."[13]  Ries v. Nat'l

R.R. Passenger Corp., 960 F.2d 1156, 1159 (3rd Cir. 1992).

This court has found no authority to support Plaintiffs'
argument that a common carrier is absolutely liable under FELA
for any injuries caused by a violation of 49 U.S.C. § 20109 or
that such a violation establishes negligence per se.  Under the
FRSA's anti-retaliation provision, interstate railroad carriers
"may not discharge, demote, suspend, reprimand, or in any other
way discriminate against an employee" for engaging in certain
protected activities.  49 U.S.C. § 20109(a).  Although that
statute may lead to safer railroads by protecting employees who
raise safety concerns, it does not easily translate to a tort
standard of care.  Accordingly, this court finds that 49 U.S.C.
§ 20109 is not a "safety statute" that may be used to establish
absolute liability or negligence per se under FELA.

Furthermore, even assuming that FRSA establishes a standard
of care and resulting negligence, it does not address the "zone
of impact" or the required causal connection between the injury
sustained and the failure to comply with a statutory duty.  Even
if a violation of the FRSA's anti-retaliation provision could

---

[13] The safety statute or regulation must be specifically
aimed at the railroad industry.  In the Fourth Circuit, a
violation of an OSHA regulation may be used as evidence of
negligence but not to establish negligence per se.  Albrecht v.
Baltimore & Ohio R.R. Co., 808 F.2d 329, 332 (4th Cir. 1987).

establish negligence per se under FELA, this court would still dismiss the FELA claim.  A finding of negligence per se would not make an otherwise uncompensable type of injury compensable.

## B.  FRSA Retaliation Claim

Defendants also move to dismiss Plaintiffs' claim under the FRSA's anti-retaliation provision, contending that this court does not have subject matter jurisdiction over that claim because Mrs. Fulk, rather than the decedent, filed the administrative complaint.[14]  The extent to which a claim under 49 U.S.C. § 20109 survives the death of a railroad employee is a question of first impression.  For the reasons that follow, this court finds that Mr. Fulk's widow has standing to file the administrative complaint on his behalf.[15]

---

[14] Defendants have not moved to dismiss this claim on any other basis.

[15]  This court finds no merit to Plaintiffs' argument that the FRSA claim may be pursued through FELA.  (See Pls.' Resp. (Doc. 20) at 6 n.4.)  The cited cases hold only that a carrier by railroad is absolutely liable under FELA for violations of any of the Safety Appliance Acts, including the Boiler Inspection Act.  Unlike the FRSA anti-retaliation provision, those acts did not create an independent enforcement mechanism; instead, they "are substantively if not in form amendments to the [FELA]" and "cannot be regarded as statutes wholly separate from and independent" of that act.  Urie v. Thompson, 337 U.S. 163, 189 (1949); see also Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969); Kernan v. Am. Dredging Co., 355 U.S. 426, 432-33 (1958); Lilly v. Grand Trunk W. R.R. Co., 317 U.S. 481, 485 (1943).

The FRSA is intended "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The act was "substantially amended in 2007 to include anti-retaliation measures." Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 156 (3rd Cir. 2013). Under the FRSA's anti-retaliation provision, a railroad carrier may not "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done," to engage in any of the specified protected activities. 49 U.S.C. § 20109(a).

An employee who alleges discharge, discipline, or other discrimination in violation of the statute may seek relief, "with any petition or other request for relief . . . to be initiated by filing a complaint with the Secretary of Labor."[16] 49 U.S.C. § 20109(d)(1). If a final decision has not been issued within 210 days and the delay is not due to the employee's bad faith, the employee may file an original action in federal district court. 49 U.S.C. § 20109(d)(3).

---

[16] The Secretary of Labor has delegated the authority to investigate and adjudicate whistleblower claims to the Assistant Secretary for OSHA. 75 Fed. Reg. 3924 (Jan. 25, 2010).

Here, it is undisputed that Mr. Fulk never filed an administrative complaint.  Defendants have not challenged the substantive sufficiency of the administrative complaint filed by Mrs. Fulk, nor have they argued that Plaintiffs have otherwise failed to comply with the statutory requirements for enforcement actions.  Thus, the only issue is whether Mrs. Fulk, the decedent's widow and personal representative, had standing to bring the action in the first place.

### i.  FRSA Statutory Language and Regulations

Three different provisions inform the court's analysis of this issue. The first is FRSA's whistleblower provision, which states that "[a]n employee who alleges discharge, discipline, or other discrimination . . . may seek relief in accordance with the provisions of this section . . . by filing a complaint with the Secretary of Labor." 49 U.S.C. § 20109(d)(1).  The second is the whistleblower provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121(b), the "rules and procedures" of which FRSA incorporates into its enforcement provision. 49 U.S.C. § 20109(d)(2)(A) ("Any action under [this provision] shall be governed under the rules and procedures set forth in section 42121(B) . . . ."").  AIR21's text states that "[a] person who believes that he or she has been discharged or otherwise

discriminated against . . . may . . . file (<u>or have any person</u>
<u>file on his or her behalf</u>) a complaint with the Secretary of
Labor." 49 U.S.C. § 42121(b)(1) (emphasis added). The third
provision is an agency regulation implementing FRSA, which
states that "[a]n employee who believes that he or she has been
retaliated against by an employer . . . may file, or have filed
by any person on the employee's behalf, a complaint alleging
such retaliation." 29 C.F.R. § 1982.103(a).

The primary point of contention between the parties is the
interpretation of 49 U.S.C. § 20109((d)(2)(A) incorporating
AIR21's procedures.  Defendants contend that § 20109(d)(2)(A)
only incorporates specific provisions of AIR21 and does not
incorporate the provision that would allow another to file a
complaint with the Secretary of Labor on behalf of the employee.
(Defs.' Br. (Doc. 11) at 15-21.)  Plaintiffs, on the other hand,
argue that Plaintiff Dana Fulk does have standing to file a
complaint on behalf of Mr. Fulk with the Secretary of Labor
under the statutory language and the implementing regulations.
(<u>See</u> Pls.' Resp. (Doc. 20) at 7-10.)

Having reviewed the plain language of the regulation and
the two statutes, this court admits to having some difficulty
determining whether a FRSA claim can be filed on behalf of a
deceased employee. FRSA's incorporative language ("Any action

under paragraph (1) shall be governed under the rules and procedures set forth in section 42121(b) . . . ." (49 U.S.C. 20109(d)(2)(A))) unequivocally governs the enforcement actions contemplated in § 20109(d)(1) (those "to be initiated by filing a complaint with the Secretary of Labor"), but it is unclear whether Congress intended to incorporate AIR21's "or have any person file on his or her behalf" language into the FRSA. The Secretary of Labor apparently concluded that the language was incorporated, as evidenced by the promulgated regulation appearing to adopt AIR21's language allowing third party filing of complaints. This court has no reason to find 29 C.F.R. § 1982.103(a) to be an unreasonable interpretation of the statute.

Defendants note, correctly, that an implementing regulation cannot expand a statutory grant of jurisdiction. (Defs.' Br. (Doc 11) at 16.) Nevertheless, viewing the statute as a whole, this court finds the full text of 49 U.S.C. § 20109(d)(1) and (2) significant. Notably, (d)(1) provides: "In general.--An employee who alleges discharge, discipline, or other discrimination . . . may seek relief in accordance with the provisions of this section, with any petition or other request for relief under this section to be initiated by filing a complaint with the Secretary of Labor."

As further explained in (d)(2)(A):  "In general.--Any action under paragraph (1) shall be governed under the rules and procedures set forth in section 42121(b), including . . . ."

Thus, § 20109 authorizes the initiation of a request for relief by filing a <u>complaint</u> with the Secretary.  Furthermore, "<u>any action</u>" under paragraph (1) is governed by the rules and procedures set forth in § 42121(b).  Each of these provisions appears to address an action, including a complaint within the Department of Labor.  An action at law is not permitted or described in § 20109(d)(1); instead, that is addressed in other sections of the statute.  As a result, this court finds that any AIR21 provisions incorporated by § 20109(d)(2) apply to the filing of a complaint with the Secretary of Labor.

The additional issue of what sections of AIR21 are incorporated into § 20109's procedures is more complex. Section 20109(d)(2)(A) provides that

> Any action shall be governed under the rules and procedures set forth in § 42121(b), including:
>
> (i) Burdens of proof.
> (ii) Statute of limitations.
> (iii) Civil actions to enforce.

Oddly, although § 20109's use of the term "including" would suggest inclusion of specific provisions of § 42121, the statutory language does not seem to follow that interpretation.  Section 42121 contains a requirement that

a complaint be filed "not later than 90 days after the date on which such violation occurs." 49 U.S.C. § 42121(b)(1). However, § 20109 states that "[a]n action under paragraph (1) shall be commenced not later than 180 days after the date on which the alleged violation . . . occurs." 49 U.S.C. § 20109(d)(2)(A)(ii).

It therefore appears to this court that the word "including" as used in § 20109(d)(2)(A) is intended to add to or modify the language of § 42121 where noted. Rather than acting as a limitation to the incorporated provisions, this court finds that an action under § 20109(d)(1) is "governed under the rules and procedures set forth in section 42121(b)" except where those provisions are modified by § 20109(d)(2)(A)(i), (ii), or (iii) and (B). As a result, this court finds that the § 42121(b)(i) language permitting the filing of a complaint on behalf of the employee ("or have any person file on his or her behalf") is a procedure incorporated into 49 U.S.C. § 20109. This court therefore further finds, in this case, that §§ 20109 and 42121 would authorize Mrs. Fulk to file a complaint with the Secretary of Labor on behalf of Mr. Fulk as she was authorized as required by statute.

Nevertheless, to the extent a third party is empowered to commence an action under the FRSA on an employee's behalf, this court finds that both the statute and regulation contemplate a _living_ employee,[17] or more specifically, an employee who was alive at the time he gave the directive to file the complaint. The use of the present tense of the verb "have" implies that the employee must have "caused" someone to file a complaint on his behalf or, at least, that the employee must have been alive to "allow" someone to do so. See Webster's New College Dictionary 520 (3d ed. 2008) (defining "have," as relevant here, in the following ways: "To cause to be done or performed"; "To cause to, as by persuasion or compulsion"; "To cause to be"; "To permit: allow"). Contrary to this analysis, Defendants argue that the statutory language ("An employee who believes . . . may file, or have filed . . . on the employee's behalf") (Defs. Br. (Doc. 11) at 13) and the implementing regulations make clear that only a living employee can file or "have filed on his behalf, a complaint." This court disagrees with that interpretation.

---

[17] The regulations define "employee" as "an individual presently or formerly working for . . . a railroad carrier." 29 C.F.R. § 1982.101(d). This definition is supported by the statutory language authorizing an employee "who alleges discharge . . . ." to file a claim. 49 U.S.C. § 20109(d)(1).

The "have filed on his behalf" language contemplates a living employee capable of authorizing the filing of the complaint, but the liberal language of the statute does not otherwise limit the authority, nor does it establish any requirements at the precise time of the filing of the complaint.

In this case, the Complaint alleges that it "was filed on behalf of Mr. Fulk and/or his Estate in Mrs. Fulk's capacity as 'any persons on the employee's behalf' as authorized under 29 C.F.R. §§ 1982.101 and 1982.103(a)."[18] (Compl. ¶ 30.) Ultimately, whether Mrs. Fulk was properly authorized within the meaning of the statute and the regulations (i.e., whether Mr. Fulk directed her to file the action when he was alive) is an issue of fact that, in light of the allegations contained in the Complaint, is sufficiently pled and may be further addressed at summary judgment, if necessary.

Defendants' motion to dismiss the FRSA claim is limited to one issue – whether or not the FRSA action may be initiated by a

_____

[18] In a supplemental brief, Plaintiffs argue certain facts perhaps relevant to agency but not included in the Complaint. (See Pls.' Supplemental Br. Opposing Dismissal (Doc. 29) at 3 ("Mr. Fulk drafted his administrative complaint and talked to his wife about filing it as late as the night before his death.").) Those facts are not considered here, but are the kinds of facts which may be addressed and tested during discovery.

deceased employee's widow filing an administrative complaint. As
Defendants state:

> It is important to make clear that Defendants'
> motion to dismiss the Count 2 claim does not implicate
> the more commonplace question whether a proceeding that
> has been properly initiated survives the subsequent
> death of the person who initiated it.  For purposes of
> this motion, Defendants have no occasion to dispute,
> and assume arguendo, that if a railroad employee has
> actually filed a § 20109 complaint with DOL while
> living, the employee's estate could continue to pursue
> the claim at DOL . . . .

(Defs.' Br. (Doc. 11) at 14-15.)  Defendants contend with
respect to such a claim punitive damages would be banned. (Id.
at 15 n.6.)

Plaintiffs, responding to Defendants' argument to dismiss
the FRSA claim, argue that the FRSA claim survives under the
federal common law.  (Pls.' Resp. (Doc. 20) at 11.)  In light of
Defendants' limitation as to their argument (that an FRSA
complaint cannot be initiated by a deceased employee's widow),
it is not entirely clear to this court why Plaintiffs have
advanced this federal common law argument except as an
alternative to the FRSA statutory provisions for allowing Mrs.
Fulk's claim to proceed.

This court has entered its ruling finding that the FRSA
permits the filing of the complaint with the DOL, assuming Mrs.
Fulk was in fact authorized to file the complaint on behalf of
Mr. Fulk.  This court does not therefore find it necessary to

determine, at this time, an issue that was not raised by Defendants in the original motion to dismiss except to briefly acknowledge the parties' apparent agreement that punitive damages are not recoverable.

The fact that "Congress has failed to provide a clause on survivorship to accompany the statute granting the right of action does not necessarily mean that Congress intended that the action abate upon the death of a party." Mallick v. Int'l Bhd. of Elec. Workers, 814 F.2d 674, 677 (D.C. Cir. 1987). "In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law." United States v. NEC Corp., 11 F.3d 136, 137 (11th Cir. 1993) (holding that a relator's qui tam action survives his death); see also Smith v. Dep't of Human Servs., 876 F.2d 832, 834 (10th Cir. 1989); Hoffman v. Sumner, 478 F. Supp. 2d 1024, 1030 (N.D. Ill. 2007). "The basic federal rule is that an action for a penalty does not survive, though remedial actions do." Faircloth v. Finesod, 938 F.2d 513, 518 (4th Cir. 1991) (citations omitted); see also NEC Corp., 11 F.3d at 137. "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." NEC Corp., 11 F.3d at 137.

For the reasons that follow, this court agrees with the parties that Plaintiffs' remedies are limited to those specified in 49 U.S.C. § 20109(e)(2).

This court will dismiss the claim for punitive damages pursuant to 49 U.S.C. § 20109(e)(3) because punitive damages are "plainly penal." See Estwick v. U.S. Air Shuttle, 950 F. Supp. 493, 498 (E.D.N.Y. 1996) (dismissing claim for punitive damages under the ADEA, ADA, and Title VII after the plaintiff's death); see also EEOC v. Timeless Invs., Inc., 734 F. Supp. 2d 1035, 1057 (E.D. Cal. 2010); Kettner v. Compass Grp. USA, Inc., 570 F. Supp. 2d 1121, 1134 (D. Minn. 2008) ("Plaintiff is entitled to all available remedies under the ADA and Rehabilitation Act except for liquidated or punitive damages."); Medrano v. MCDR, Inc., 366 F. Supp. 2d 625, 635 (W.D. Tenn. 2005) (holding that a claim for punitive damages under 42 U.S.C. § 1981 abated upon the plaintiff's death under federal common law); Allred v. Solaray, Inc., 971 F. Supp. 1394, 1396 (D. Utah 1997) ("[C]laims for punitive damages under the ADA do not survive the plaintiff's death."); Caraballo v. S. Stevedoring, Inc., 932 F. Supp. 1462, 1466 (S.D. Fla. 1996).

This court also rejects Plaintiffs' claim for wrongful death damages under the federal common law. A wrongful death action gives "surviving relatives a cause of action for losses

they suffered as a result of the decedent's death," Dooley v. Korean Air Lines Co., 524 U.S. 116, 123 (1998), and the FRSA's anti-retaliation provision only provides remedies for the injured employee, 49 U.S.C. § 20109(e); see also California v. Sierra Club, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."). The Complaint does not state a separate wrongful death claim. Furthermore, this court finds that amending the Complaint to include a common law wrongful death claim would be futile. Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811 (2001), and Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970), recognize a right to recover for wrongful death under general maritime law, a "species of judge-made federal common law," Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996). This court has found no authority that would support recognizing such a right in any other legal context.

## IV.  CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART.**  The motion is **GRANTED** as to the FELA claim and **DENIED** as to the FRSA claim.  **IT IS FURTHER ORDERED** that

Plaintiffs' potential remedies on the FRSA claim are limited to those specified in 49 U.S.C. § 20109(e)(2).

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file surreply (Doc. 22) is **DENIED.**

This the 4th day of August, 2014.

William L. Osteen, Jr.
_____
United States District Judge